

Colin G. Prince
John B. McEntire, IV, *Pro Hac Vice Pending*
The Glover Mansion
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100
Attorneys for Plaintiff



Frey Buck
Evan Bariault, *Pro Hac Vice Pending*
Mark Conrad, *Pro Hac Vice Pending*
1200 Fifth Ave
Suite 1900
Seattle, WA 98101
206-486-8000
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
### DISTRICT OF IDAHO
Hon. B. Lynn Winmill

| | |
|---|---|
| Christopher Wilske, individually,<br><br>               Plaintiff,<br><br>     v.<br><br>City of Boise, a municipal entity; Ada County, a municipal entity; Officer Wayne Anderson, individually,<br><br>               Defendants. | No. 1:26-cv-153-BLW<br><br>First Amended Complaint<br><br>Jury Demanded |

TABLE OF CONTENTS

I.    Introduction .................................................................................................... 1

II.    Jurisdiction and Venue ................................................................................. 2

III.    Parties ............................................................................................................ 3

IV.    Facts ............................................................................................................... 3

    A.    Officer Wilske is ambushed by white supremacists. ................................. 3

    B.    Officer Wilske is ambushed by Boise police. ........................................... 5

        1.    Dispatch informs Boise police there are multiple officers on-scene and moving into the ER. ................................................................. 5

        2.    Dispatch informs Boise police that an on-scene officer was returning to the ER bay to confront the gunman. ................................ 5

        3.    Dispatch informs Boise police that the gunman's whereabouts are unknown. ............................................................................................ 6

        4.    Boise officers fail to announce their presence and snipe Officer Wilske in the face through two glass doors as he talks on a cellphone. .................... 6

    C.    City of Boise ignores Officer Wilske's claim. ......................................... 11

    D.    The City of Boise declares that shooting Officer Wilske was "reasonable," "justified," and "within policy." ......................................... 11

    E.    The City of Boise blames Ada County dispatchers. ............................... 12

V.    Jury Demand ............................................................................................... 13

VI.    Claims .......................................................................................................... 14

    A.    First Cause of Action: 42 U.S.C. § 1983 — Unreasonable Seizure and Excessive Force Against Wayne Anderson ............................................... 14

    B.    Second Cause of Action: 42 U.S.C. § 1983 — Municipal Liability Against the City of Boise ............................................................................ 15

    C.    Third Cause of Action: Negligence Against the City of Boise ............... 17

    D.    Fourth Cause of Action: Negligent Infliction of Emotional Distress Against the City of Boise ........................................................................... 18

    E.    Fifth Cause of Action: Negligence Against Ada County ....................... 18

VII.    Relief Requested .......................................................................................... 19

## I. INTRODUCTION

On March 20, 2024, Officer Christopher Wilske and two other officers with the Idaho Department of Correction were tasked with transporting an inmate, Skylar Meade, to St. Alphonsus hospital in Boise for a medical issue. Just after 2 a.m., as the IDOC officers were loading Meade into a transport van in the ER ambulance bay as they prepared to leave, they were ambushed by Nicholas Umphenour, Meade's accomplice in an orchestrated escape. Umphenour shot IDOC officers Elijah Jackson and Daniel Lopez and immediately fled with Meade.

Officer Jackson rolled under the transport van for cover while Officer Wilske grabbed Lopez and dragged his bleeding colleague into the emergency room for treatment.

The incident was reported right away and four Boise police officers responded, including Defendant Wayne Anderson. While en route to the emergency bay, dispatchers told the Boise officers there were multiple other officers already at the scene: "We have *one officer* shot. . . There's *another officer*"—Officer Wilske—"there trying to get him into the ER at this time."

Once Officer Wilske passed Lopez to medical staff, he returned to the emergency room doors, as dispatch told the responding Boise police: "[The officer] just left to back *into the bay* to see if he could confront the man with the gun." There, Officer Wilske and another IDOC officer, Thomas Edwards, stood guard inside the double set of sliding-glass doors, unsure whether the gunman would return.

Officer Wilske, wearing his IDOC uniform—a short-sleeve shirt with an IDOC badge; a duty-belt with handcuffs; and khaki cargo-pants—pulled out his cellphone and called IDOC to report the ambush. While he was talking on the phone, Officer Wilske was ambushed again—this time by Defendant Anderson from the Boise Police Department.

Defendant Anderson, carrying a high-powered rifle, had approached outside with three other Boise officers. They found a quiet scene. No gunshots. No fleeing people. No shouting. The officers had complete cover behind parked vehicles and were in no danger from anyone. Defendant Anderson remarked that he saw "movement," and—despite ample time to seek more

First Amended Complaint  – 1 –  <span>CONNELLY LAW OFFICES<br>321 West Eighth Avenue<br>Spokane, Washington 99204<br>253.593.5100</span>

information, resolve any conflicting information from dispatch, or properly identify his target—shot Officer Wilske through the glass doors, the round striking his face and embedding shrapnel in his orbital socket, brow, and torso.

At the time he was shot, Officer Wilske posed no threat to anyone. He wasn't threatening anyone and no one was fleeing from him. Boise police even had a code word they could yell to identify other law enforcement officers—specifically designed to avoid friendly-fire debacles like this. Defendant Anderson chose to shoot first, ignoring whether his target was actually a suspect or one of many other possibilities, such as the officers dispatch had identified, hospital security personnel, or simply an average Idahoan present in the emergency room during a crisis carrying a lawful firearm.

Following an "administrative review," Defendant City of Boise and the Chief of Police declared that shooting Officer Wilske was perfectly "reasonable"—it was "justified" and, worse, "within policy."

If shooting an unknown person that could be an officer, security personnel, or someone else is within policy, then no Idahoan is safe in Boise.

Officer Wilske needed serious medical care, lost work, and suffers the psychological damage attendant with being shot in the face. Complying with Idaho law, he then filed a tort claim, notifying Defendant City of Boise of his injuries. The purpose of that notice is to "save needless expense and litigation" by giving the government—here, the City of Boise—the "opportunity for amicable resolution." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 557 n.3 (2009). The City ignored it. Because Defendants have refused to take accountability for their unconstitutional misconduct, Officer Wilske is forced to file a lawsuit to vindicate his rights.

## II.  Jurisdiction and Venue

2.1    The Court holds federal-question jurisdiction because this Complaint includes federal claims under 42 U.S.C. § 1983,[1] and supplemental jurisdiction over the state-law claims.[2]

---

[1] *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

[2] *See* 28 U.S.C. § 1367 ("district courts shall have supplemental jurisdiction over all other claims

First Amended Complaint                – 2 –                Connelly Law Offices
                                                            321 West Eighth Avenue
                                                            Spokane, Washington 99204
                                                            253.593.5100

2.2      The Court holds personal jurisdiction and venue because the events giving rise to Mr. Wilske's claims occurred in Ada County, Idaho, which is within the District of Idaho.[3]

### III.   Parties

3.1      Plaintiff Christopher Wilske resides in Mountain Home, Idaho, and was seriously injured by Defendants' negligence and unconstitutional conduct, as detailed below.

3.2      Defendant City of Boise is a political subdivision of the State of Idaho and a municipal corporation subject to suit and service of process. The City is sued directly and vicariously for the conduct of its employees performed within the scope of employment.

3.3      Defendant Ada County is a political subdivision of the State of Idaho and a municipal corporation subject to suit and service of process. *See* Idaho Code § 31-601; § 31-2201 *et seq.* The County is vicariously liable for the conduct of its employees performed within the scope of employment.

3.4      Defendant Wayne Anderson was employed by Defendant City of Boise as a police officer on March 20, 2024, when he shot Officer Wilske in the head, and at all relevant times was acting within the scope of employment.

### IV.    Facts

**A.      Officer Wilske is ambushed by white supremacists.**

4.1       On March 20, 2024, Officer Christopher Wilske was a corporal employed by Idaho Department of Corrections working at the Idaho Maximum Security Institution. That day, he and two other IDOC officers, Jackson and Lopez, were tasked with transporting inmate Skylar Meade, who had cut himself with razors, to St. Alphonsus hospital for care.

4.2      Shortly after 2 a.m., Officer Wilske and his colleagues began moving Meade to the waiting transport van in the ambulance bay to return to the prison:

---

that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").
[3] *See* 28 U.S.C. § 1391(b)(2), (e)(1) (venue lies where "substantial part" of events occurred).

First Amended Complaint                    – 3 –                    Connelly Law Offices
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100



4.3    As the officers began loading Meade into the van, Nicholas Umphenour, Meade's accomplice, approached and opened fire, shooting Officer Jackson in the torso and Officer Lopez in the shoulder and buttock. The shooting happened so fast that none of the officers had an opportunity to respond. Officer Jackson rolled under the transport van for cover while Officer Wilske dragged Officer Lopez into the hospital through the ER doors.

4.4    Officer Wilske found nurses and other staff behind the ER counter and immediately stated shots had been fired in the ER bay. He continued pulling Officer Lopez to safety and passed him to medical staff for emergency medical treatment.

4.5    At the same time, Meade and Umphenour escaped to a waiting car.

4.6    With Officer Lopez safe, Officer Wilske quickly returned to the ER entrance to guard it and prevent the shooter from entering. At the same time, Officer Jackson got to his feet and entered the ER so that medical staff could attend his gunshot wound.

First Amended Complaint                – 4 –                Connelly Law Offices
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

4.7    While Officer Wilske guarded the entrance to the ER, another IDOC officer, Thomas Edwards, who was present for an unrelated transport, joined, and the two took cover at the sides as they continued to protect the entrance.

**B.    Officer Wilske is ambushed by Boise police.**

4.8    At the same time Officer Wilske was caring for his colleagues, medical staff called 9-1-1 and reported events, and relayed information directly from Officer Wilske, including a description of the shooter. Boise police began responding to the hospital and receiving information from dispatchers, which they quickly ignored.

**1.    Dispatch informs Boise police there are multiple officers on-scene and moving into the ER.**

4.9    As police converged on the hospital, dispatchers relayed multiple critical facts. Dispatch radioed to responding officers that not one, but at least *two* officers were already present at St. Alphonsus—one of whom had been shot:

| | |
|---|---|
| **Dispatcher:** | **We have *one officer* shot. . . There's *another officer* there trying to get him into the ER at this time.** |

4.10    With that, responding Boise police knew multiple officers were already present at the center of the crisis—present near the shooter and specifically moving into the ER itself.

4.11    Dispatch also warned Boise police the on-scene officers might be from a different jurisdiction: "I'm unclear which jurisdiction it is," the dispatcher told Boise police regarding the wounded officer.

**2.    Dispatch informs Boise police that an on-scene officer was returning to the ER bay to confront the gunman.**

4.12    Dispatch then explicitly broadcast to all responding Boise officers—in no uncertain terms—that the on-scene officer who had just dragged his wounded colleague into the hospital was returning to the ER ambulance bay:

| | |
|---|---|
| **Dispatch:** | **He just left to back *into the bay* to see if he could confront the man with the gun.** |

4.13    The caller was clear: the suspect was "outside" the hospital.

4.14    With that, responding Boise police now knew to expect the second officer—Officer Wilske—would be present on-scene when they arrived. That is, of course, why the dispatcher conveyed that critical information.

4.15    That announcement also carried with it an obvious point: the responding officer would be armed as he confronted the gunman.

4.16    Thus, responding Boise police were told in the starkest terms that an on-scene officer had gone into the emergency room and was, as they approached, returning from the ER towards the ambulance bay.

> **3.    Dispatch informs Boise police that the gunman's whereabouts are unknown**.

4.17    After telling the responding Boise police to expect an officer on-scene moving toward the bay, dispatch told officers no one was sure where the gunman was:

> **Dispatch:    Security is trying to get him on camera. There are no eyes on the gunman at this time.**

4.18    The gunman's location was unknown. In fact, Meade and Umphenour had fled immediately, as was apparent on surveillance footage.

4.19    Dispatch's information flagged another obvious point: the hospital itself has security personnel, indicating to Boise police that more friendly people might be armed at the scene.

> **4.    Boise officers fail to announce their presence and snipe Officer Wilske in the face through two glass doors as he talks on a cellphone.**

4.20    Four Boise officers, Kevin Witmuss, Ryan Pollard, Jacob Lee, and Defendant Wayne Anderson, approach the ER ambulance bay and find a quiet scene:

First Amended Complaint                – 6 –                CONNELLY LAW OFFICES
                                                            321 West Eighth Avenue
                                                            Spokane, Washington 99204
                                                            253.593.5100



4.21    No one was fleeing from the hospital. No sounds of gunshots or yelling or other disturbances. There was no chaos—the officers had ample time to gather information and perceive that no threat existed.

4.22    The scene also confirmed the presence of other officers. Boise police found multiple IDOC prisoner-transport vans parked in spaces visibly marked for law enforcement, as well as one of the IDOC officers' duty belts on the ground. That information confirmed precisely what dispatch had said: other officers were already on-scene.

4.23    Any reasonable officer would have understood the first priority should have been to gather more information. At this point, dispatchers had contact information for multiple callers who had reported events and could have requested updates. What other law enforcement agency was on scene? How many other officers were present? Where were they? Were security personnel from the hospital also present? (Indeed, while on the phone, one hospital staff member explicitly stated she was providing information from an "officer" already on scene.)

4.24    Defendant Wayne Anderson did not understand this priority, instead choosing to adopt a shoot-first, gather-information-later approach, firing *into the ER* within seconds of seeing "movement."

First Amended Complaint                    – 7 –                    <span>CONNELLY LAW OFFICES</span>
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

4.25    The shooting unfolded as follows. Defendant Anderson entered the ER ambulance bay and took cover behind a parked van:



4.26    All the Boise officers had full cover and were not exposed.

4.27    None of the Boise officers announced their presence.

4.28    None of the Boise officers requested additional information from dispatch.

4.29    None of the Boise officers asked about the status of the multiple unknown officers on scene.

4.30    None of the Boise officers asked whether the hospital personnel had been able to locate the gunman on the security cameras. In fact, the hospital had surveillance cameras positioned in the ER ambulance bay and, had Boise police taken any time whatsoever to gather information, would have learned that the "suspect is going to be an IDOC prisoner," and the "shooter [was] last seen wearing all-dark clothing and a hooded sweatshirt," as dispatchers broadcast.

4.31    None of the Boise officers asked about any conflicting information dispatch had provided.

4.32    While Defendant Anderson positioned himself outside the ER doors, Officers Wilske and Edwards guarded the other side of the ER doors. So, at that moment, Officer Wilske

First Amended Complaint                     – 8 –                     CONNELLY LAW OFFICES
                                                                      321 West Eighth Avenue
                                                                      Spokane, Washington 99204
                                                                      253.593.5100

was standing *inside* the ER, separated from the ER ambulance bay by not one, but two sets of thick, glass sliding doors. He was standing behind a corner inside the ER, positioned so he could see if the then-unknown shooter tried to enter.

4.33 Because it was brightly lit inside and dark outside, neither Officer Wilske nor Officer Edwards could see much of anything outside. (Indeed, multiple other witnesses would later say the same thing—a person could not see "anything through" the ambulance-bay doors.) Officer Wilske could not see Defendant Anderson or any other Boise officer—although he would have heard them had they bothered to announce their presence, as a properly-trained and reasonable officer would do.

4.34 Indeed, Boise police and IDOC use a law-enforcement specific code-word to announce their presence and identify themselves to other officers—specifically to avoid friendly-fire incidents. The Boise officers, including Defendant Anderson, knew the code word. They did not use it.

4.35 Officer Wilske was dressed in attire consistent with law-enforcement, wearing his IDOC uniform: a dark, short-sleeve IDOC shirt, a law-enforcement duty belt, and khaki cargo-pants.

4.36 Beyond his obvious uniform, Officer Wilske was also wearing medical gloves—the kind law enforcement are trained to wear when transporting prisoners "to avoid the risks from blood-borne pathogens."[4] The color: bright purple.

4.37 Officer Wilske then pulled out his cellphone. He had already given a description of the suspect to hospital staff at the desk while they conveyed the information to the dispatcher. He called his supervisor to report the incident. (Upon learning of the incident, a deputy IDOC warden called both Ada County dispatch and Idaho State Police dispatch.)

---

[4] *See* U.S. Dep't of Justice, Office of Justice Programs, Nat'l Law Enforcement & Corrections Tech. Cntr., *A Comparative Evaluation of Protective Gloves for Law Enforcement and Corrections* at 1 (Oct. 2001).

First Amended Complaint  – 9 –  Connelly Law Offices
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

4.38    While on the phone with his supervisor, Officer Wilske was not pointing a firearm at anyone. He was talking. There were no signs that he posed a threat to anyone—no one was running from Officer Wilske. He wasn't stalking the halls looking for targets. Officer Wilske was holding a phone to his ear.

4.39    Boise officer Ryan Pollard confirmed Officer Wilske was not a threat. Positioned closer to the ER entryway than Defendant Anderson, Boise officer Pollard had a clearer view and described Officer Wilske's behavior as follows: "he appeared to be kind of just, it almost seemed like he was wondering. Um, it wasn't like a tactical response of movement. It was very nonchalant. Standing upright. The gun was pointed at, just in his hand. Kind of downward."

4.40    Defendant Anderson also later admitted that Officer Wilske's gun was "not being pointed directly at officers." (In fact, it was not being pointed at anyone, directly or indirectly.)

4.41    It was then that Defendant Anderson shot Officer Wilske in the face with a high-powered rifle. The bullet entered the side of Officer Wilske's face at the nose bridge and splintered into his orbital socket, brow, and torso.

4.42    Medical staff immediately responded and took Officer Wilske into the ER for treatment—a short trip since he was already inside the building.

4.43    At the time Defendant Anderson fired, Officer Wilske was not an imminent threat—or even a remote threat—to anyone. His attire, behavior, and demeanor were all consistent with being one of the already-present officers.

4.44    At no point had anyone told dispatchers or officers that the suspect was *inside* the hospital.

4.45    Defendant Anderson had ample time to perceive the situation but chose to shoot Officer Wilske anyway. On arrival, standing behind solid cover, Defendant Anderson looked into the ER doors and stated, "I've got nothing"—words no reasonable officer should say right before they open fire.

First Amended Complaint                – 10 –                Connelly Law Offices
                                                            321 West Eighth Avenue
                                                            Spokane, Washington 99204
                                                            253.593.5100

4.46     There was no threat, no signs of violence, gunshots, or other signs of an immediate threat. Then Defendant Anderson says, "I've got signs of movement at the counter . . . there he is, don't move."

4.47     A reasonable officer would have considered whether the "movement" he observed through two sets of sliding doors was one of the officers that dispatch warned them about.

4.48     A reasonable officer would have considered whether the "movement" he observed through two sets of sliding doors was a hospital security guard, a hospital visitor, or a patient waiting in the ER.

4.49     Defendant Anderson failed to act reasonably. He calmly lined up his shot and fired two rounds at the unknown person's head—Officer Wilske's—as he talked on the phone.

**C.     City of Boise ignores Officer Wilske's claim.**

4.50     Before someone files suit against a governmental entity or employee, Idaho law requires the person to file a tort notice. One of the primary reasons for that requirement is to "save needless expense and litigation" by giving the government—here, the City of Boise—the "opportunity for amicable resolution." *Van v. Portneuf Med. Ctr.*, 147 Idaho 552, 557 n.3 (2009).

4.51     Mr. Wilske timely complied with that requirement, expecting Defendant City of Boise might reach out to discuss resolution, particularly considering the serious injuries he endured.

4.52     Defendant City of Boise ignored him entirely.

**D.     The City of Boise declares that shooting Officer Wilske was "reasonable," "justified," and "within policy."**

4.53     Defendant City of Boise declared that its official policy allows officers to shoot unknown individuals without warning—even if the individual is not threatening anyone.

4.54     In the wake of the shooting, the Boise Police Department and Chief of Police commenced a formal administrative review. That review included interviews with officers and knowledge of the evidence cited above—including that Boise police had been alerted to the presence of other officers on-scene; that one officer was returning to the ER doors in an attempt to

First Amended Complaint                 – 11 –                 <span>Connelly Law Offices</span>
                                                              321 West Eighth Avenue
                                                              Spokane, Washington 99204
                                                              253.593.5100

"confront" the gunman; that the Boise officers found a calm scene, witnessed no gunshots, yelling, or fleeing persons; that Officer Wilske was wearing his IDOC uniform, talking on the phone, and was not threatening anyone.

4.55    Despite overwhelming evidence of Defendant Anderson's outrageous and unconstitutional conduct, the Chief of Police and Defendant City of Boise declared that Defendant Anderson's decision to shoot Officer Wilske in the face was perfectly "reasonable"—it was "justified, lawful," and even more alarmingly, "within policy."

4.56    The Chief of Police is the final decisionmaker, with full authority to superintend, direct, and manage the department and all assigned and employed department officers," including Defendant Anderson. *See* Boise City Code § 1-10A-2; 1-10A-3. He exercises all the powers authorized by federal, state, and city law. *See id.*

4.57    The goal of the administrative review was not genuine investigation; it was to insulate the City of Boise and Defendant Anderson from accountability and from the mandates of the U.S. Constitution.

**E.    The City of Boise blames Ada County dispatchers.**

4.58    Thirty days before the statute of limitations deadline, the City of Boise's Office of Police Accountability released a report blaming essentially everyone but the officers.[5] It faults Officer Wilske because, although he was wearing his IDOC uniform and duty belt, he "was not wearing an equipment carrier type vest" and the "cloth badge sewn on his chest" was not big enough to stop Officer Anderson from shooting him within seconds. It faults IDOC because they did not notify Boise police about bringing an inmate to the hospital in their jurisdiction. The hospital staff who called 9-1-1 had not "observed the shooting" and thus "could not provide thorough information" (even though one of the hospital staff was in a trauma room with Officer Jackson, who was giving her information to relay directly).

---

[5] Officer Wilske issued multiple public-records requests across 2024, 2025, and 2026, and received redacted records on March 11, 2026.

First Amended Complaint                    – 12 –                    CONNELLY LAW OFFICES
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

4.59    The blameworthy groups include, according to the City of Boise, Ada County dispatchers, who handle 9-1-1 calls for the City of Boise. According to the City, dispatchers "did not communicate sufficiently among themselves" and failed to relay information. (Notably, one of the Boise officers ordered others to *stop* communicating and "keep the air clear" while they approached the emergency bay on foot.) By way of example, one caller informed dispatchers that an inmate was being treated and IDOC officers "were accompanying him." According to the City, if "this information had been passed to BPD officers," the officers would have been able to obtain "further information before entering the scene." (Boise officers could have requested additional information from dispatch or multiple callers inside the hospital who had left their information or one caller who was with IDOC Officer Jackson with an *open* line at the very moment Officer Anderson shot Officer Wilske in the face.)

4.60    That being said, because Defendant City of Boise accuses Ada County dispatchers of failing to provide material information, Plaintiff must include Ada County. Thus, on information and belief, Ada County dispatchers were negligent, failed to provide material information, causing or contributorily causing Officer Wilske to be shot.

4.61    Mr. Wilske filed a tort claim notice with Ada County on March 10, 2026, within 180 days of when he could first reasonably have discovered the claim, and the claim is now ripe.[6] *See Bray v. Idaho Dep't of Juv. Corr.*, 175 Idaho 221 (2025) (noting " the ITCA requirement that a [tort notice] be filed as a prerequisite to being able to file a court action does not create a procedural bar to filing an action until a response is received").

## V.    Jury Demand

5.1    Mr. Wilske respectfully demands a jury trial on all triable claims.

---

[6] Mr. Wilske intends to hold formal service for 90 days under Fed. R. Civ. P. 4(m).

First Amended Complaint            – 13 –            Connelly Law Offices
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

## VI.   Claims

### A.   First Cause of Action: 42 U.S.C. § 1983 — Unreasonable Seizure and Excessive Force Against Wayne Anderson

6.1     Based on the facts above, Defendant Anderson violated Officer Wilske's right to be free from unreasonable seizure and excessive force under the Fourth Amendment to the United States Constitution.

6.2     At all relevant times, Defendant Anderson was a Boise police officer acting under color of state law and within the course and scope of his employment.

6.3     As detailed above, Defendant Anderson intentionally fired his rifle at Officer Wilske and struck him in the face while Officer Wilske stood inside the ER, behind two sets of glass doors, talking on his cellphone. By intentionally shooting Officer Wilske, Defendant Anderson seized him within the meaning of the Fourth Amendment.

6.4     At the time Defendant Anderson fired, Officer Wilske was not threatening Defendant Anderson or anyone else. He was not fleeing. He was not resisting. He was not aiming a weapon at anyone. He was not acting like an active shooter. He was wearing attire consistent with law enforcement, had just returned to guard the ER entrance after dragging a wounded officer to safety, and was talking on his phone.

6.5     Dispatch had already warned responding Boise officers that multiple officers were already on scene, and that one officer (Wilske) had returned toward the ER ambulance bay to confront the gunman. When Defendant Anderson arrived, he found a calm scene. There were no gunshots, no screaming, no fleeing persons, and no immediate threat confronting him. He had full cover behind a parked IDOC vehicle. He had time to gather more information, use the available officer-identification code word, issue a meaningful warning, or otherwise identify the person inside before shooting. He did none of those things.

6.6     Under these circumstances, Defendant Anderson's use of deadly force was objectively unreasonable and excessive.

First Amended Complaint                    – 14 –                    <span>Connelly Law Offices</span>
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

6.7     As a direct and proximate result of Defendant Anderson's unconstitutional conduct, Officer Wilske suffered severe physical injury, pain, emotional distress, medical expenses, lost income, loss of earning capacity, and other damages to be proven at trial.

6.8     Defendant Anderson's conduct was malicious, oppressive, or carried out in reckless disregard of Officer Wilske's federally protected rights. Officer Wilske is therefore entitled to compensatory damages, punitive damages against Defendant Anderson to the extent permitted by law, and reasonable attorney fees and costs under 42 U.S.C. § 1988.

**B.     Second Cause of Action: 42 U.S.C. § 1983 — Municipal Liability Against the City of Boise**

6.9     Based on the facts above, the City of Boise is directly liable under 42 U.S.C. § 1983 for its own unconstitutional policies, customs, practices, decisions, and failures, and not merely under a theory of respondeat superior.

6.10     The City, through the Boise Police Department and its Chief of Police, was responsible for establishing, approving, and enforcing policy governing officer use of deadly force, officer-identification procedures, active-shooter response, target identification, supervision, training, and post-incident review.

6.11     As detailed above, after a formal administrative review that included witness interviews and review of the relevant evidence, the Chief of Police and the City concluded that Defendant Anderson's shooting of Mr. Wilske was "reasonable," "justified," "lawful," and "within policy."

6.12     The City made that determination with knowledge of facts showing, among other things, that dispatch had warned responding officers that multiple officers were already on scene; that one such officer had returned toward ER ambulance bay to confront the gunman; that the gunman's location was unknown; that the scene was quiet when Boise officers arrived; that Boise officers had full cover; that no Boise officer announced his presence or used the available officer-identification code word; and that Officer Wilske, wearing his IDOC uniform and talking on his cellphone, was not threatening anyone when Defendant Anderson shot him in the face.

First Amended Complaint                          – 15 –                          CONNELLY LAW OFFICES
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

6.13    The City's approval was not a mere failure to discipline. It was an express determination by the final decisionmaker that Defendant Anderson's decision to shoot Mr. Wilske in the face under these circumstances was justified and consistent with official policy.

6.14    By affirmatively approving Defendant Anderson's shooting and the asserted basis for it, the City ratified the unconstitutional seizure and excessive force inflicted on Officer Wilske and made that conduct its own official act for purposes of § 1983.

6.15    In the alternative, and in addition, the City failed to adequately train, supervise, and discipline Boise officers in core areas where the need for training was obvious and the risk of constitutional injury was grave. Those areas included target identification before the use of deadly force, officer-to-officer identification and friendly-fire prevention, use of available dispatch information, use of warnings and challenge commands, cross-jurisdiction response, and assessment of active-shooter scenes involving armed officers or other lawful armed persons already on scene.

6.16    As detailed above, those failures were a moving force behind the shooting of Officer Wilske. These failure predictably led Boise officers to ignore dispatch information, fail to identify known officers present, fail to announce themselves, fail to use the available code word, fail to gather readily available information, and resort immediately to deadly force against an unidentified and non-threatening person.

6.17    The City's express post-incident approval of the shooting as "reasonable," "justified," "lawful," and "within policy" further evidences deliberate indifference to the constitutional rights of persons, including Officer Wilske, who may be present at Boise police emergency scenes.

6.18    As a direct and proximate result of the City's unconstitutional policies, ratification, deliberate indifference, and failures in training, supervision, and discipline, Officer Wilske suffered severe physical injury, pain, emotional distress, medical expenses, lost income, loss of earning capacity, and other damages to be proven at trial.

First Amended Complaint                    – 16 –                    Connelly Law Offices
                                                                   321 West Eighth Avenue
                                                                   Spokane, Washington 99204
                                                                   253.593.5100

6.19    Mr. Wilske is entitled to compensatory damages and reasonable attorney fees and costs under 42 U.S.C. § 1988.

### C.    Third Cause of Action: Negligence Against the City of Boise

6.20    Based on the facts above, the City of Boise, acting through its officers and employees within the course and scope of their employment, owed Officer Wilske a duty to exercise ordinary care in responding to the reported shooting, identifying potential threats, gathering and using readily available information, issuing appropriate warnings, identifying known officers present, and refraining from shooting nonthreatening persons.

6.21    The City, through its officers and employees, breached that duty. As detailed above, Boise officers ignored dispatch information that other officers were already on scene, failed to clarify conflicting information, failed to identify the person inside the ER despite ample evidence showing Officer Wilske was not an active shooter, failed to announce their presence, failed to use the available officer-identification code word, failed to gather readily available information from dispatch or hospital personnel, and fired through two sets of glass doors at an unidentified person who was not threatening anyone.

6.22    Those acts and omissions were operational, on-scene police conduct, not protected high-level policy formation.

6.23    Defendant Anderson's conduct was at minimum negligent and fell far below the level of ordinary care required under the circumstances.

6.24    Defendant City of Boise is liable for the negligence of its employees acting with the course and scope of employment. *See* Idaho Code § 6-903.

6.25    As a direct and proximate result of the negligence of the City's employees, Officer Wilske suffered severe physical injury, pain, emotional distress, medical expenses, lost wages, loss of earning capacity, and other economic and noneconomic damages to be proven at trial.

6.26    Officer Wilske is entitled to recover all damages allowed by Idaho law.

First Amended Complaint                    – 17 –                    Connelly Law Offices
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

**D.      Fourth Cause of Action: Negligent Infliction of Emotional Distress Against the City of Boise**

6.27    Based on the facts above, the City of Boise owed Officer Wilske a duty to exercise ordinary care in responding to the incident at St. Alphonsus and in protecting him from unreasonable and foreseeable harm.

6.28    The City breached that duty through the negligent acts and omissions described of its employees described above and is vicariously liable for their conduct.

6.29    As a direct and proximate result of that negligence, Officer Wilske suffered severe emotional distress, terror, anxiety, humiliation, and ongoing psychological harm arising from being shot in the face by responding police while he was attempting to protect others and guard the emergency-room entrance.

6.30    Those emotional injuries are genuine, serious, and accompanied by and manifested in severe physical injury, bodily trauma, physical pain, medical treatment, and other physical consequences.

6.31    As a direct and proximate result of the City's negligence, Officer Wilske suffered damages in an amount to be proven at trial and is entitled to recover all damages allowed by Idaho law.

**E.      Fifth Cause of Action: Negligence Against Ada County**

6.32    Based on the facts above, Defendant Ada County, acting through its employees within the course and scope of their employment, owed Mr. Wilske a duty to exercise ordinary care in responding to the reported shooting, gathering and using readily available information, communicating appropriately and accurately with callers and responding officers.

6.33    On information and belief, Defendant Ada County breached that duty through the negligent acts and omissions of its employees described above and is vicariously liable for their conduct, including but not limited to failing to provide material or accurate information during the law enforcement response.

First Amended Complaint                    – 18 –                    <span>Connelly Law Offices</span>
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

6.34    As a direct and proximate result of the negligence of the County's employees, Mr. Wilske suffered severe physical injury, pain, emotional distress, medical expenses, lost wages, loss of earning capacity, and other economic and noneconomic damages to be proven at trial.

## VII.    Relief Requested

Plaintiff respectfully requests the following relief: (1) an award of compensatory damages (both economic and noneconomic) in amounts to be proven at trial; (2) punitive damages pursuant to 42 U.S.C. § 1983, as outlined above; (3) attorneys' fees under 42 U.S.C. § 1988, as outlined above; and (4) such other relief as the Court deems appropriate.

Dated: March 19, 2026

Connelly Law Offices
Attorneys for Christopher Wilske

s/Colin G. Prince
Colin G. Prince, Idaho Bar No. 13028
John B. McEntire, IV, Wash. Bar. No. 39469[7]
321 West Eighth Avenue
Spokane, Washington 99204
253.593.5100

Frey Buck, P.S.
Attorneys for Christopher Wilske

s/ Evan Bariault
Evan Bariault,  Wash. Bar No. 42867[8]
Mark Conrad, Wash. Bar No. 48135[9]
1200 Fifth Ave, Suite 1900
Seattle, WA 98101
206-486-8000

---

[7] Pro Hac Vice Application pending.
[8] Pro Hac Vice Application pending.
[9] Pro Hac Vice Application pending.

First Amended Complaint                    – 19 –